784 So.2d 494 (2001)
FLORIDA GOVERNMENTAL UTILITY AUTHORITY, Appellant,
v.
Robert (Bob) DAY, etc., et al., Appellees.
No. 5D00-1890.
District Court of Appeal of Florida, Fifth District.
March 30, 2001.
Rehearing Denied May 24, 2001.
*495 Gregory T. Stewart and Heather J. Melom of Nabors, Giblin & Nickerson, P.A., Tallahassee, for Appellant.
Loren E. Levy of The Levy Law Firm, Tallahassee, and John B. Ritch of Overstreet, Miles, Ritch & Cumbie, Kissimmee, for Appellee.
SHARP, W., J.
Florida Governmental Utility Authority (the Utility) appeals a final summary judgment entered against it and in favor of Day and Heffner, the Property Appraiser and Tax Collector, respectively of Osceola County, after the court found its complaint was untimely. We reverse.
The facts in this case are not in dispute. The Utility was created by an interlocal agreement between Brevard, Lee, Polk and Sarasota Counties, pursuant to section 163.01, et seq., the Florida Intergovernmental Cooperation of Act of 1969, for the purpose of purchasing the assets of Avatar Holdings, Inc. (Avatar) and its subsidiaries. One of these subsidiaries was Poinciana Utility System, located in both Osceola and Polk Counties. This appeal concerns only that portion of Poinciana's assets located in Osceola County.
Osceola denied the Utility a tax exemption because it was created under chapter 163, and not chapter 196. Governmental entities are exempt from taxes and assessments under both of these chapters. §§ 163.01(7)(g)4; 196.192; 196.199(1)(c).[1] Section 163.01(7)(g)4 specifically provides for such exemption for entities created by interlocal agreements.[2]
At the time the sale was closed on April 16, 1999, Avatar placed into escrow with *496 Heffner the sum of $60,688.24, its pro rated share of the taxes for the tax year 1999.[3] Heffner notified Day that the Tax Collector's Office had received the pro rated taxes, and that the property had been transferred to the Utility. On April 19, 1999, Heffner's office notified the Utility that Day placed the full value on the tax roll, did not address governmental tax exemption issues until after the tax rolls had been prepared, and then issued a certificate of correction.
The Utility could not file an annual application for exemption from taxes because under section 196.011(1), the application had to be filed by March 1. On that date the Utility was not the owner of Poinciana. However, section 196.011(8) provides that any applicant who is qualified to receive an exemption and fails to file an application by the due date, may still file an application for the exemption, and may also file a petition with the Value Adjustment Board (VAB) requesting that the exemption be granted. The petition may be filed at any time during the taxable year on or before the 25th day following the mailing of the TRIM Notice.
In August of 1999, the Utility received the TRIM Notice for taxes due on its real property which did not reflect its tax exempt status, and which imposed a total tax of $7,158.14. The Utility contacted Day's office concerning the lack of exemption for the period of 1999 that it had been the owner of Poinciana, and Day's office undertook a review of the Utility's status to qualify for the exemption. As a result, the Utility did not file an appeal with the VAB by September 3, 1999, which was the last day to do so. Day certified the tax roll on October 15, 1999, while the review continued.
On November 1, 1999, the Utility received its November tax bill which mirrored the TRIM Notice and continued to impose taxes of $7,158.14 on its real property. The next day, Day advised the Utility not to pay that bill because of the continuing review by Osceola's County Attorney, Levy. Levy subsequently determined that the Utility was not entitled to a tax exemption.
On December 15, 1999, Heffner sent the Utility the December tax bill certifying the tax assessment. For the first time, the assessment included ad valorem taxation on tangible personal property in the sum of $196,369.01.
The Utility filed its application to the VAB on January 3, 2000, but ten days later was advised the VAB had elected not to hear it. The Utility then filed suit in the circuit court. In March of 2000, both Heffner and Day filed motions for summary judgment, alleging the complaint was untimely based on section 194.171(2), which provides:

No action shall be brought to contest a tax assessment after 60 days from the date the assessment being contested is certified for collection under s. 193.122(2), or after 60 days from the date a decision is rendered concerning such assessment by the value adjustment board if a petition contesting the assessment had not received final action by the value adjustment board prior to extension of the roll under s. 197.323. (emphasis supplied)
Subsection (2) is jurisdictional, and no court has jurisdiction in tax cases until subsections (1) and (2) are met. *497 § 194.171(6), Fla. Stat.; Department of Revenue v. Eastern American Technologies Corp., 762 So.2d 1044 (Fla. 5th DCA 2000); Department of Revenue v. Goembel, 382 So.2d 783 (Fla. 5th DCA 1980).
However, Florida courts recognize a difference between a claim involving the classification of property, and a claim challenging a tax assessment on property. Sartori v. Department of Revenue, 714 So.2d 1136, 1139 (Fla. 5th DCA 1998). A classification claim is not governed under section 194.171; a claim challenging a tax assessment is subject to the statute. Sartori. See also Wal-Mart Stores, Inc. v. Day, 742 So.2d 408, 410 (Fla. 5th DCA 1999) (challenge to ad valorem tax assessment as excessive, untimely where not filed within sixty-day period of section 194.171(2)); Department of Revenue v. Gerald Sohn, P.A., 654 So.2d 249 (Fla. 1st DCA 1995)(action for reclassification of property not action to contest assessment). Instead, a classification claim is subject to the four year statute of limitation for errors in classification.[4]
In this case, the lawsuit did not challenge the tax assessment-the valuation of the property-but rather challenged the classification of the property for valuation purposes, i.e., its classification or status as a non-exempt governmental entity. It is therefore not subject to the sixty-day period of section 194.171(2). Sartori; Sohn.
Because the summary judgment was improperly granted based upon the Utility's failure to file suit within the sixty-day period of section 194.171(2), we must reverse. Summary judgment is properly granted only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 643 (Fla.1999).
REVERSED AND REMANDED.
PALMER, J., concurs.
PLEUS, J., concurs and concurs specially with opinion.
PLEUS, J., concurring, and concurring specially.
I concur in this opinion by Judge Sharp but write to express my concern over the apparent lack of due diligence on the part of the property appraiser and the effect this had on the rights of Florida Governmental Utility Authority (FGUA).
I also write to suggest that the Florida Legislature may wish to clarify the appropriate procedure a property appraiser should follow when ownership of potentially exempt real and personal property passes to a governmental entity after the March 1 deadline for claiming an exemption and the date on which the tax rolls are certified. Such legislation could avoid a problem similar to the one encountered in this case.
A property appraiser has a solemn duty to respond promptly to inquiries from taxpayers and to notify affected entities promptly if an exemption is going to be denied. The appraiser here should have either deleted the real property from the tax rolls by July 1 or notified FGUA the property would not be exempt so that it could pursue its statutory remedies.
The first notice FGUA had of a problem was receipt of a TRIM Notice in August. Because of the appraiser's delayed response, FGUA was unable to file a timely appeal with the Value Adjustment Board.
To make matters worse, in November, the appraiser told FGUA not to pay the *498 tax bill until the appraiser could get an opinion from his attorney. The further delay in obtaining the opinion cannot be excused because of an alleged need for additional information from FGUA. I find the legal opinion from the appraiser's attorney to be totally incredible.
The crowning blow, however, came on December 15, 1999, when FGUA received a tax bill for $196,369.01, due on tangible personal property. The excuse for the delay was that record ownership is changed only once a year.
The net effect of the delays and botched procedures was an improper denial of FGUA's right to an exemption and a denial of a review by the Value Adjustment Board. This whole fiasco was inexcusable and cost the taxpayers dearly in wasted attorney's fees.
NOTES
[1] Section 196.192, Exemptions from ad valorem taxation, provides:

Subject to the provisions of this chapter:
(1) All property owned by an exempt entity and used exclusively for exempt purposes shall be totally exempt from ad valorem taxation. (Emphasis added)
Section 196.199(1)(c) entitled "Government property exemption" provides:
All property of the several political subdivisions and municipalities of this state or of entities created by its general or special law and composed entirely of governmental agencies, or property conveyed to a nonprofit organization which would revert to the governmental agency, which is used for governmental, municipal, or public purposes shall be exempt from ad valorem taxation, except as otherwise provided by law. (Emphasis added)
[2] Section 163.01(7)(g)4 provides:

The accomplishment of the authorized purposes of a legal entity created under this paragraph is in all respects for the benefit of the people of the state, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions. Since the legal entity will perform essential governmental functions in accomplishing its purposes, the legal entity is not required to pay any taxes or assessments of any kind whatsoever upon any property acquired or used by it for such purposes or upon any revenues at any time received by it.... The exemption granted in this subparagraph is not applicable to any tax imposed by chapter 220 on interest, income, or profits on debt obligations owned by corporations. (Emphasis added)
[3] See Section 196.295(1) and Rule 12D-13.016(1), which provide that when any governmental unit purchases or otherwise acquires property for government purposes, the person owning such property shall be required to place in escrow with the county tax collector an amount equal to the current taxes prorated to the date of transfer of title.
[4] §§ 95.11, 195.073, Fla. Stat.; Fla. Admin. Code R. 12D-8.021.